UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROSEMARY CHINYE OKOLIE TORIOLA,

        Plaintiff,

-against-

FJC SECURITY SERVICES INC., MR. JOE
"DOE," JENNIFER STONE, JOSEPH NUZZO,
KAWAN LOVELACE, STEPHEN
WEISENHOLZ, MICHAEL KELLY, and
LAURIE MOLLOY,

        Defendants.
-----------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
13-CV-5142 (CBA) (JO)

**AMON, United States District Judge:**

Pro se plaintiff Rosemary Chinye Okolie Toriola ("Toriola") brought this employment discrimination action against defendants FJC Security Services Inc., Mr. Joe "Doe," Jennifer Stone, Joseph Nuzzo, Kawan Lovelace, Stephen Weisenholz, Michael Kelly, and Laurie Molloy (collectively, "defendants"), for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. On August 4, 2015, the Court dismissed the action with prejudice pursuant to Federal Rule of Civil Procedure 41(b). (D.E. dated Aug. 4, 2015.) Toriola now moves to vacate this order of dismissal, pursuant to Federal Rule of Civil Procedure 60(b)(1). For the following reasons, Toriola's motion is denied.

## BACKGROUND

### I. Procedural History

Toriola filed the complaint in this action on September 12, 2013, bringing Title VII claims against defendants FJC Security Services Inc. and Mr. Joe "Doe." (D.E. # 1.) The case was assigned to the Honorable John Gleeson, United States District Judge for the Eastern District of New York. On July 7, 2014, Toriola filed an amended complaint, which added claims against individual defendants Jennifer Stone, Joseph Nuzzo, Kawan Lovelace, Michael Kelly, and Laurie

1

Molloy. (D.E. # 26.) On August 5, 2014, the Honorable James Orenstein, United States Magistrate Judge, entered a Case Management and Scheduling Order, which: (1) ordered Toriola to produce a statement of the facts she anticipated proving at trial and her discovery requests by October 6, 2014; (2) ordered defendants to make similar disclosures and requests and to respond to Toriola's demands by November 6, 2014; and (3) ordered Toriola to respond to defendants' discovery demands by December 8, 2014. (D.E. # 33.) Magistrate Judge Orenstein also scheduled a status conference for January 6, 2015 to discuss a schedule for depositions and any outstanding discovery matters. (Id.)

Toriola did not respond to defendants' discovery requests in advance of the January 6, 2015 conference as required by the Case Management and Scheduling Order. (See D.E. # 36.) At the January 6, 2015 conference, Magistrate Judge Orenstein ordered each party to produce a list of witnesses to question in a pretrial deposition by January 9, 2015, and to discuss the witness lists with each other by January 16, 2015. (Id.) Magistrate Judge Orenstein also ordered Toriola to serve her responses to the defendants' discovery requests and review the defendants' discovery responses no later than January 20, 2015, and scheduled another status conference for January 23, 2015. (Id.)

Toriola again failed to provide discovery as required, and on January 16, 2015, defendants filed a motion to compel. (D.E. # 38.) On January 22, 2015, the day before the next status conference, Toriola moved to adjourn it because she claimed to be too ill to attend. (D.E. # 40.) Toriola attached to her motion copies of records showing that she had been treated for back pain and dental pain on January 15, 2015 and January 21, 2015. (D.E. # 40-1.) Defendants objected to Toriola's adjournment request because one of the medical records attached to her motion stated, "[w]e believe you are able to resume work." (D.E. # 39.) Notwithstanding defendants' objection,

Magistrate Judge Orenstein granted the motion and rescheduled the status conference to February 5, 2015. (D.E. dated Jan. 22, 2015.)

On February 4, 2015, the day before the next scheduled status conference, Toriola again moved to adjourn the conference because she was too sick to attend and purported to support her request with documents showing she was being treated for chronic low back pain. (D.E. # 42.) Defendants again objected to Toriola's motion, arguing that her chronic condition was not an emergency that warranted an adjournment. (D.E. # 43.) Magistrate Judge Orenstein declined to adjourn the conference, but to accommodate Toriola's claimed condition, converted the conference from an in-person proceeding to a telephone conference. (D.E. dated Feb. 4, 2015.)

Shortly before the scheduled start of the telephone conference on February 5, 2015, Toriola sent a fax to Magistrate Judge Orenstein's chambers requesting to adjourn the telephone conference because she had sustained second-degree burns on the evening of February 4, 2015. (D.E. # 45.) Magistrate Judge Orenstein denied Toriola's motion on the grounds that he had already granted Toriola an adjournment and converted the conference to a telephone conference to accommodate Toriola's request. (D.E. # 46.) Magistrate Judge Orenstein further reasoned, "As Ms. Toriola is manifestly able to write a document, I assume she can also engage in the minimal manual activity necessary to participate in a telephone conversation." (Id.)

Notwithstanding the denial of Toriola's motion to adjourn, Toriola failed to appear at the telephone conference, as Magistrate Judge Orenstein set forth in the following order:

> A member of my chambers staff called the plaintiff to inform her of my ruling on today's motion to adjourn the telephone conference scheduled for 3:30, and left a message on the plaintiff's voice-mail recorder including the substance of my ruling. Shortly thereafter, and just before 3:30, the plaintiff called my chambers but then hung up before the conference could begin. Members of my staff and the defendant's counsel then made repeated attempts to call the plaintiff back, but she did not answer. I therefore infer that the plaintiff refuses to participate in today's telephone conference despite my order that she do so and despite her demonstrated ability to make a telephone call at the time scheduled for the conference.

3

> I respectfully order the parties to appear in person before me on February 18, 2015 at 2:00 P.M., at which time I will afford the plaintiff an opportunity to show cause why I should not recommend that her case be dismissed for failure to comply with multiple court orders. In addition, I respectfully order the plaintiff to contact the defendant's counsel by telephone or in person to discuss each party's proposed witness list and to ensure that they understand who each proposed witness is, so that the parties can be prepared to discuss all proposed depositions at the next conference. No later than February 12, 2015, the plaintiff must serve the remainder of her responses to the defendants' discovery requests. Failure to comply will result in an appropriate discovery sanction. I respectfully direct the defendant's counsel to provide a copy of this order to the plaintiff forthwith.

(D.E. # 46.) Toriola failed to appear as required at the order to show cause hearing, and defendants reported that Toriola had not complied with Magistrate Judge Orenstein's orders requiring her to contact defendants' counsel and respond to the outstanding discovery responses. (D.E. # 48.) At the defendants' request, Magistrate Judge Orenstein agreed to issue a report and recommendation advising the Court to dismiss Toriola's claims with prejudice for failure to prosecute. (Id.) On February 23, 2015, Toriola faxed to Magistrate Judge Orenstein's chambers medical records, which indicated that she had a doctor's appointment regarding her low back pain at 3:50 p.m. on February 18, 2015, but did not submit any excuse why she failed to attend the hearing. (D.E. # 50.)

On April 1, 2015, Toriola faxed another doctor's note to Magistrate Judge Orenstein's chambers indicating that her back pain had been resolved. (D.E. # 55.) Toriola also filed a motion to compel discovery, amend her complaint, and sanction the defendants. (D.E. # 58.) Magistrate Judge Orenstein held a conference on April 28, 2015, and denied Toriola's motion in its entirety and set a date for defendants to take Toriola's deposition in court, with Toriola's depositions of the defendants scheduled thereafter. (D.E. # 61.) At the April 28, 2015 conference, Magistrate Judge Orenstein advised Toriola that her failure to appear for her deposition would result in the dismissal of her case. (Id.) However, the day before her scheduled deposition, Toriola faxed to Magistrate Judge Orenstein's chambers a note from her doctor asking her to be excused "from work and all activities due to pain," along with other medical records. (D.E. # 67.) Although

Toriola did not request any relief, Magistrate Judge Orenstein construed the fax as a motion to excuse her from appearing for her deposition; Magistrate Judge Orenstein denied the request because the medical records that were submitted merely indicated that Toriola had had a "routine" visit with her doctor and had received a prescription for certain medications. (D.E. # 65.)

Toriola failed to appear for her deposition on May 21, 2015. (D.E. # 68.) Magistrate Judge Orenstein attempted to contact Toriola's doctor, but could not reach him. (Id.) Magistrate Judge Orenstein subsequently ordered Toriola to show cause in writing, by May 28, 2015, why the case should not be dismissed for her failure to appear and obey court orders. (Id.) Toriola did not file a timely response; she merely faxed additional medical records to Magistrate Judge Orenstein's chambers on June 18, 2015, (D.E. # 71.) On May 29, 2015, defendants moved to dismiss the case for failure to prosecute. (D.E. # 70.)

Magistrate Judge Orenstein subsequently issued a Report and Recommendation ("R&R") on June 22, 2015, recommending that the Court dismiss the amended complaint with prejudice. (D.E. # 72 ("R&R").) Toriola did not file a timely objection to the R&R, and the Court adopted the R&R and dismissed the amended complaint on August 4, 2015. (D.E. dated Aug. 4, 2015.)

## II.  Toriola's Rule 60(b) Motion

Almost a year later, on July 26, 2016, Toriola filed a motion to vacate the dismissal of her case. (D.E. # 77.) The case was reassigned to this Court on July 28, 2016. (D.E. dated July 28, 2016.) Toriola filed an additional motion to vacate the dismissal of her case on August 3, 2016, (D.E. # 83), and the Court subsequently set a briefing schedule, (D.E. dated Aug. 17, 2016).[1]

---

[1] Toriola filed a number of letters to the Court contending that the submissions she faxed to the Court were not timely uploaded on the docket. (See, e.g., D.E. # 99, 100.) In light of Toriola's pro se status, the Court will consider her submissions to be timely.

5

## STANDARD OF REVIEW

Rule 60(b) allows the Court to revisit an order or judgment and provide relief based on any of six criteria: (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence"; (3) "fraud . . . misrepresentation, or other misconduct of an adverse party"; (4) "the judgment is void"; (5) "the judgment has been satisfied . . . or it is no longer equitable that the judgment should have prospective application"; and (6) "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). To prevail on a Rule 60(b) motion, the moving party must demonstrate that one of the criteria outlined in the rule applies. Williams v. N.Y.C. Dep't of Corrections, 219 F.R.D. 78, 83 (S.D.N.Y. 2003).

The decision whether to grant a party's Rule 60(b) motion is "committed to the 'sound discretion' of the district court." Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (quoting In re Emergency Beacon Corp., 666 F.2d 757, 760 (2d Cir. 1981)). Rule 60(b) motions "are generally granted only upon a showing of exceptional circumstances," Mendell In Behalf of Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990), and "evidence in support of the motion to vacate a final judgment [must] be 'highly convincing,'" Kotilcky v. U.S. Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987) (quoting United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977)); see also Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986) (holding that Rule 60(b) motions are "extraordinary judicial relief" that can be granted "only upon a showing of exceptional circumstances").

Pro se litigants are not "excused from the requirement that they produce 'highly convincing' evidence to support a Rule 60(b) motion." Gil v. Vogliano, 131 F. Supp. 2d 486, 494 (S.D.N.Y. 2001). "The heavy burden for securing relief from final judgments applies to pro se litigants as well as those represented by counsel." Broadway v. City of New York, No. 96-CV-2798 (RPP), 2003 WL 21209635, at *3 (S.D.N.Y. May 21, 2003).

## DISCUSSION

Toriola moves to vacate the dismissal of her case pursuant to Rule 60(b). She contends that she failed to appear at conferences and comply with the Court's discovery orders due to medical problems. (See, e.g., D.E. # 77 ¶ 7 ("I did not abandon my case. The only reason I was not active in my case was because of my health, which I have no control over.").) Toriola also contends that she "was surprised to learn that [her] case had been dismissed with prejudice since August 4, 2015." (D.E. # 83 ¶ 6.) The Court construes Toriola's arguments as a request that the Court reconsider the dismissal order under the Rule 60(b)(1) justifications of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

### I.  Surprise

Toriola first contends that she was "surprised" to find out that her case had been dismissed with prejudice because "[n]o one ever served [her] any papers, saying [her] case was dismissed with prejudice." (D.E. # 83 ¶ 6.) However, the record demonstrates that Magistrate Judge Orenstein repeatedly warned Toriola that failure to comply with Court orders would result in the dismissal of her case: Magistrate Judge Orenstein held a hearing in which he afforded Toriola an opportunity to show cause why her case should not be dismissed for failure to comply with the Court's orders, (D.E. # 46, 48); at the April 28, 2015 status conference, Magistrate Judge Orenstein warned Toriola that failure to appear for her deposition would result in the dismissal of her case, (D.E. # 61); and Magistrate Judge Orenstein ordered Toriola to show cause in writing why her case should not be dismissed, (D.E. # 70). Furthermore, Magistrate Judge Orenstein's R&R recommending the dismissal of her case was sent to her address of record, (see D.E. # 73), yet Toriola failed to file a timely objection. Although Toriola now claims that she never received

papers indicating her case would be dismissed, she never filed a notice that her address of record changed.[2]

Because the record demonstrates that Toriola had ample notice that her failure to comply with Court orders would result in the dismissal of her case, Toriola has not established "surprise" as grounds for relief under Rule 60(b)(1). See, e.g., Williams, 219 F.R.D. at 84–85 (holding that plaintiff did not establish surprise as ground for relief from order dismissing her suit for failure to comply with discovery orders because a prior court order explained that the "action will be dismissed for failure to respond to discovery requests if plaintiff does not comply with this Order").

## II. Excusable Neglect

Toriola also argues that she failed to prosecute her case due to medical problems, (D.E. # 77, 83), which the Court construes as an argument that relief is warranted based upon "excusable neglect." The Supreme Court in Pioneer Investment Services Co. v. Brunswich Associates Ltd Paternship, provided a list of factors to be weighed in making a determination of whether there was excusable neglect.[3] 507 U.S. 380, 395 (1993). Those include: the danger of prejudice to the non-moving party; the length of delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was in the reasonable control of the movant; and whether the movant acted in good faith. Id. Although excusable neglect is an "elastic concept" and each of these four factors is important, courts in this Circuit afford considerable weight to the third factor, i.e., "the reason for the delay, including whether it was within the reasonable control of the movant." Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (quoting Pioneer

---

[2] Toriola had previously filed a notice of change of address of record, (D.E. # 35), which indicates she was aware that she was required to notify the Court of any changes in her address.
[3] Although Pioneer involved a bankruptcy proceeding, the Second Circuit has applied the Supreme Court's standard in Pioneer in evaluating motions under Rule 60(b)(1). See Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997).

8

Inv. Servs. Co., 507 U.S. at 395); see also id. at 366 n.7 ("[T]he four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import." (quoting Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5–6 (1st Cir. 2001))).

### A. The Danger of Prejudice to Defendants

In considering a motion to vacate pursuant to Rule 60(b)(1), in the default judgment context, the Second Circuit has cautioned that "delay alone is not a sufficient basis for establishing prejudice." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983) (citations omitted). Rather, it must be shown that delay will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Id. However, "prejudice may be presumed as a matter of law in certain cases, but the issue turns on the degree to which the delay was lengthy and inexcusable." United States ex rel. Drake v. Norden Sys., 375 F.3d 248, 256 (2d Cir. 2004); see also Green ex rel. Estate of Green v. Advanced Cardiovascular Imaging, No. 07-CV-3141 (JCF), 2009 WL 3154317, at *3 (S.D.N.Y. Sept. 30, 2009) (explaining that the risk of prejudice to the nonmoving party is greatest where the "moving party has allowed so much time to elapse that it would be difficult to conduct discovery or otherwise proceed with the case.").

Here, the prejudice to defendants amounts to more than mere delay. Toriola delayed the progress of this case for nearly two years after she filed it, and no discovery took place before the Court dismissed Toriola's amended complaint on August 4, 2015. The events at issue in Toriola's amended complaint took place between 2004 and early 2013, (see D.E. # 26), and given the significant passage of time since then, it "may be difficult to retrieve records and to locate individuals who have knowledge of the facts or who may be able to recall information regarding the circumstances of this case." Canini v. U.S. Dep't of Justice Fed. Bureau of Prisons, No. 04-

CV-9049 (CSH), 2008 WL 818696, at *4 (S.D.N.Y. Mar. 26, 2008). As a result, defendants will likely be prejudiced by vacating the dismissal order after such a long delay. See, e.g., id. (finding prejudice where the incident at issue occurred over four years earlier and no discovery had taken place); Williams, 219 F.R.D. at 86 (reopening case arising out of six year old events would prejudice nonmoving party because no discovery had yet occurred). Furthermore, prejudice to the defendants may be presumed because, as discussed below, Toriola's delay was both lengthy and inexcusable.

Accordingly, although not dispositive, this factor militates against a finding of excusable neglect.

**B. The Length of the Delay and Reason for the Delay**

The second and third Pioneer factors, the length of the delay and the asserted reasons for the delay, also weigh against a finding of excusable neglect. First, Toriola failed to prosecute her lawsuit over a prolonged period. The record indicates that for nearly two years, Toriola repeatedly failed to comply with the Court's discovery orders and did not appear at multiple status conferences before Magistrate Judge Orenstein. As Magistrate Judge Orenstein noted in the R&R, Toriola "exhibited a 'pattern of dilatory conduct' and allowed her claims against defendants to lie 'dormant with no significant activity' since she failed to respond to their discovery requests in November 2014." (R&R at 6.)

Second, Toriola now contends that she delayed in prosecuting this action due to medical problems. Toriola asserts that she became "seriously ill" between May 16 and May 20, 2015, and describes her medical treatment on May 20 and May 21, 2015. (D.E. # 77 ¶¶ 2–3.) However, throughout the nearly two years that this action was pending, Toriola repeatedly missed scheduled court appearances and failed to comply with the Court's orders for alleged health reasons.

Toriola's Rule 60(b) motion offers no evidence to justify her delays in prosecuting this case between the filing of her complaint in September 2013 and May 2015. To the contrary, a medical report from Toriola's visit to Dr. Ahmed on May 20, 2015 indicates that Toriola had been "feeling well" since September 2013, and her back pain had only recurred three weeks earlier. (D.E. # 83 at 8.)

Furthermore, the only evidence she offers to support her assertions about her medical problems in May 2015 are unsigned letters from her doctor, (D.E. # 83 at 7), and unverified medical records and prescriptions, (id. at 8–18). These unverified documents merely show a course of treatment for low back pain, and do not indicate that Toriola was incapacitated and unable to respond to written and oral discovery or otherwise participate in this action when it was pending. Rather, the medical records attached to Toriola's motion demonstrate that she was sufficiently able to go to medical appointments and physical therapy sessions, which suggests that she could have participated in phone conferences and otherwise prosecuted her case.

### C. Whether Toriola Acted in Good Faith

The fourth Pioneer factor requires that there be evidence of good faith on the part of the plaintiff. Pioneer, 507 U.S. at 392. Upon review of the record, it is clear that Toriola did not prosecute her case in good faith. Toriola repeatedly failed to respond to Court orders, did not attend status conferences, and evaded phone calls from the Court regarding her case. Magistrate Judge Orenstein was generous in granting numerous extensions, and converting in-person court proceedings into telephone conferences to accommodate Toriola; Toriola, however, failed to comply with these deadlines and to appear at telephone conferences.

In her Rule 60(b) motion, Toriola offers no evidence of a good faith effort to proceed with this case. As discussed above, she merely cites medical records from May 2015 and does not

11

attempt to demonstrate good faith for her delays in prosecuting her case between September 2013 and May 2015. Indeed, Toriola's Rule 60(b) motion is merely a continuation of her pattern of dilatory conduct as she waited nearly a year after her case was closed to file her Rule 60(b) motion. She claims that after May 21, 2015, she "continued to be under [her] doctor's care," and "was medically discharged on February 22, 2016," (D.E. # 83 ¶¶ 4, 5), but neither explains why this medical treatment prevented her from filing a Rule 60 motion nor offers any facts to show why she waited approximately five months after she was purportedly released by her doctor to file the instant motion.

All four of the Pioneer factors militate in favor of defendants. Toriola's motion for relief under Rule 60(b)(1) is therefore denied.

## CONCLUSION

For these reasons, Toriola's Rule 60(b) motion is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 368 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: March  /  , 2017
      Brooklyn, New York

s/Carol Bagley Amon
_____
Carol Bagley Amon
United States District Judge